Nilda C. Petrarca *vs.* Antonio Delfonso *et al.*

JANUARY 25, 1952.

Present: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

O'Connell, J.   This is a bill in equity in the nature of one for specific performance of an alleged oral agreement to devise to complainant a parcel of real estate in consideration of certain personal services rendered to her father and stepmother.   After a hearing in the superior court on bill, answer and proof, a decree was entered denying and dismissing the bill.   The cause is before us on complainant's appeal from that decree.

In substance the bill alleges that complainant is a daughter of Luigi Castellucci, hereinafter called Luigi, who died November 3, 1947, and the stepdaughter of Angela Castellucci, sometimes referred to as Angela, who died April 5, 1949; that Luigi and his wife Angela were owners as joint tenants of certain real estate located at 226 Nelson street in the city of Providence, upon which there was a three-family house; that complainant lived with her father and stepmother in said house until her marriage in February

1947; and that at the request of Luigi and Angela she took care of the home and garden for many years prior to their deaths.

The bill further alleges that complainant was employed for a number of years during which time she gave to Luigi and Angela her entire earnings; that while residing at said premises she also took care of Angela; and that her father and stepmother promised her on many occasions and in the presence of numerous persons that if she stayed with them and rendered services in their household they would devise to her the real estate above referred to.

The bill further alleges that, upon the death of Luigi, Angela became the sole owner of the premises by reason of the joint tenancy with her husband; that on April 17, 1946 Angela executed a will in which, after making specific gifts and devises, she bequeathed the *rest and residue* of her estate to the respondents herein; that respondent Viola Corsetti was named as executrix; that the will has been duly admitted to probate; and that said executrix is about to sell the real estate in question. The bill prays that respondents may be enjoined and restrained from encumbering, alienating, selling or transferring said premises; that they may be declared to be trustees thereof in favor of complainant; that they may be ordered and directed to execute and deliver a deed thereof to complainant; and for other incidental relief.

It appears from the testimony that respondents are respectively two brothers, a sister and a niece of the testatrix and as above stated that complainant is her stepdaughter. The complainant's mother died when she was two years of age, and when she was about three years old her father married Angela, who was then a widow.

The complainant testified that the Nelson street house was built about 1933 when she was fourteen or fifteen years of age; that she attended high school for one year and then left to help out the family; that she worked for about eight years; that she made about $15 a week in the

beginning, which was later increased to as much as $25; and that at first she turned over all her wages to her father and later, when he became ill, to her stepmother. In testifying as to the large amount of work which she did about the premises, she stated that after working hours she planted the garden, sometimes plowing it, and cut the grass and hedges; that she worked every night until late, did all the laundry work, and shoveled snow when necessary; and that, as well as cleaning her own home, when any of the tenements were vacated she washed and cleaned woodwork, scraped floors, took off wallpaper and whitewashed walls.

Concerning the agreement to devise to her the Nelson street house, she testified: "Well, many times we would be sitting down, my mother and father, and we would get to talking about the house, and they both promised me, they said if I stood by them and was good to them and did all the work I should have done, they would leave me the house." She stated that they told her substantially the same thing "A good dozen times." On cross-examination, however, she admitted that she only occasionally did the work about the house, referred to above, from November 1947, when her stepmother requested her to leave, until the time of the latter's death in April 1949.

In apparent corroboration of complainant's testimony as to the agreement to leave her the house, a number of witnesses testified in effect that Mrs. Castellucci told them either that the house was Nilda's or was going to be hers after her death. One witness testified that the stepmother said to Nilda in his presence that when she died the house would be Nilda's. Another testified that Mrs. Castellucci said that "Nilda could be sure on her death she would inherit the house." Testimony was also presented by complainant to show the existence of cordial relations between her and her stepmother. Numerous witnesses, however, testified for the respondents that relations between

complainant and her stepmother were sometimes strained. Others testified that Luigi had beaten Angela on several occasions, and that the latter had often expressed a feeling of bitterness toward Luigi and his children, and had stated that she did not intend to leave any of her property to him or his children.

Antonio Delfonso, a brother of Angela, testified that on December 26, 1939 Luigi had beaten his wife and that on the following day, before returning to his home in New York, his sister said to him: "Brother, as long as I live, and anything that remain in my life, property or anything, Luigi Castellucci family will have nothing." Another witness testified that sometime in 1946 Mrs. Castellucci told him: "They don't take care of me while I was sick. They didn't do anything and so I made a Will to make sure that anything that I possess, anything in my name now, the day that I die not Luigi, not Nilda, not Americo, or Dina, they don't get nothing out of me to buy a handkerchief." The same witness testified that Mrs. Castellucci told him many times that she never intended to give Nilda the house; that she used to say "she [Nilda] didn't have no use for her, she didn't have no respect."

After a lengthy hearing the trial justice denied and dismissed complainant's bill. In his rescript he carefully analyzed the testimony and expressed the opinion that most of complainant's witnesses were biased and strongly prejudiced in her favor "partly because of friendship toward her and partly, probably, because of a feeling that Mrs. Castellucci's disposition of her property is unjust." He stated further that even though Nilda worked from the time she was sixteen until she married in 1947, she did so because "it was normal to do such work as the daughter in that household," and not "because of any promise made to her by Mrs. Castellucci."

The trial justice expressed the opinion that Nilda's conduct did not indicate that she felt bound by any contractual obligation to Mrs. Castellucci and that the work

which she did about the house and garden was not work "done in the faith of the contract, *and in pursuance, and only in pursuance thereof.*" (italics ours) He concluded that this work was done in fulfillment of a filial duty and not a contractual one, and that complainant had not established that a contract as she alleged was entered into and that her conduct was such as would amount to a part performance.

The law is well settled in this state that parol agreements of the kind alleged will not be enforced in equity unless proved by evidence that is clear and convincing. *Tillinghast* v. *Harrop,* 63 R. I. 394; *Deatte* v. *Duxbury,* 66 R. I. 1; *Baumgartner* v. *Seidel,* 75 R. I. 243; *Mann* v. *McDermott,* 77 R. I. 142. It also has been held here, as elsewhere, that in order to take an oral agreement out of the statute of frauds the part performance relied upon must not be done merely because of a general reliance upon the oral agreement, but must have been performed exclusively with reference thereto. *Baumgartner* v. *Seidel, supra.*

From a careful examination of the transcript and of the rescript of the trial justice, we cannot say that he was clearly wrong in his conclusions of fact drawn from conflicting evidence and therefore his decision should not be disturbed. *Deatte* v. *Duxbury* and *Mann* v. *McDermott, supra.*

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*James J. McAleer, Harry Goldstein,* for complainant.
*John Di Libero,* for respondents.